## CISSON v. UNITED STATES.

Circuit Court of Appeals, Fourth Circuit.
January 14, 1930.

No. 2898.

C. G. Wyche, of Greenville, S. C., for appellant.

Joseph A. Tolbert, U. S. Atty., of Greenville, S. C.

Before WADDILL, PARKER, and NORTHCOTT, Circuit Judges.

PARKER, Circuit Judge. W. E. Cisson, defendant in the court below, was indicted for the sale on September 14, 1928, of a pint of apple brandy in violation of the National Prohibition Act. It was charged that this was a second offense, and that he had been convicted of a first offense more than two years prior thereto. On May 28, 1929, he appeared in court and pleaded guilty and was sentenced to a term of five years in the peni-

·tentiary, with direction that sentence "take effect immediately." He thereupon procured a lawyer, who on June 3d, during the same term of court, made a motion for a new trial, which was heard during the term. Defendant had been taken in custody by the marshal immediately after he was sentenced, but no commitment in execution of the sentence was delivered to the marshal until after the motion for new trial had been entered. Defendant was in court when this motion was heard, not at that time having been committed to the penitentiary.

Because of the provision in the sentence that same should take effect immediately, the judge below was of opinion that he had no power to entertain the motion for a new trial or make any change in the punishment. He denied the motion, therefore, the denial evidently being based upon this ground, although the opinion contains some discussion of the merits. Defendant has appealed, contending that there was error in this holding. He contends, also, that the provision of the National Prohibition Act (27 USCA), under which he was sentenced, had been repealed by the Jones Act of March 2, 1929, 45 Stat. 1446 (27 USCA §§ 91, 92), and that the punishment imposed upon him was unreasonable and excessive.

■ The position of defendant as to the repeal by the Jones Act (27 USCA §§ 91, 92) of the provision of the National Prohibition Act under which he was sentenced (section 29 of Act of Oct. 28, 1919, c. 85, tit. 2, 27 USCA § 46), is that the Jones Act prescribes a punishment of $10,000 fine or five years' imprisonment, or both, for the unlawful sale of intoxicating liquors, and that the effect of this is to repeal the crime of "second offense" under the old law. It is true that the punishment prescribed by the Jones Act (27 USCA §§ 91, 92) for an unlawful sale of liquor is different from and more severe than the punishment prescribed by the original law for a second offense; but this is true, not only as to a second offense under the original law, but also as to any manufacture or sale of liquor, whether a second offense or not. If the position of defendant be correct, therefore, the effect of the Jones Act is to repeal the National Prohibition Act as to all offenses covered by the Jones Act which were committed prior to the passage of the latter. The precise question involved is whether a statute increasing punishment has the effect, as to crimes committed prior to its passage, of repealing the provisions of the original act. We do not think that it does.

■■ Congress is forbidden to pass an ex post facto law. Const. art. 1, § 9, cl. 3. And it is elementary that a statute is to be construed, if possible, so as not to violate constitutional provisions. The Jones Act, therefore, must be construed as applying only to crimes committed after its passage. When so construed, it is just as if the statute read: "The penalty for each such offense *hereafter committed* shall be a fine not to exceed $10,000 or imprisonment not to exceed five years, or both." Surely there is nothing in this inconsistent with the application of the penalties prescribed by the National Prohibition Act (27 USCA) to crimes theretofore committed. It is elementary that repeals by implication are not favored, and that statutes are to be construed together, if possible, so that both will stand. That result is obtained here if the penalties originally prescribed by the National Prohibition Act be construed as applying to offenses committed prior to the passage of the Jones Act, and the penalties of that act, as applying to offenses committed thereafter. This construction is sustained not only by reason, but also by the great weight of authority. Mongeon v. People, 55 N. Y. 613; State v. Cole, 2 McCord (S. C.) 1; State v. Taylor, 2 McCord (S. C.) 483; State v. Young, 49 La. Ann. 70, 21 So. 142; People v. Hobson, 48 Mich. 27, 11 N. W. 771; State v. Broadway, 157 N. C. 598, 72 S. E. 987; State v. Perkins, 141 N. C. 797, 53 S. E. 735, 9 L. R. A. (N. S.) 165; State v. Putney, 61 N. C. 543; Commonwealth v. Pegram, 1 Leigh (Va.) 569; Miles v. State, 40 Ala. 42; Sutherland on Statutory Construction (2d Ed.) vol. 1, p. 484. And it is certainly fair to assume that Congress, by increasing the punishment for violations of the National Prohibition Act, did not intend to grant a general amnesty for violations of the act theretofore committed. The learned judge below was correct, therefore, in holding that, as to offenses committed prior to its passage, the Jones Law did not repeal the punishments prescribed by the National Prohibition Act.

■ We think, however, that the learned judge erred in his conclusion that he was without power to entertain the motion for a new trial or reconsider the question of punishment in the case. The term of court had not expired either when the motion was made or when it was heard. Not only had the defendant not entered the penitentiary, but it also appears that he had not been delivered to the executive department for service of his sentence, and that no commitment in execution of the sentence had been delivered to the marshal. He was in the custody of an

officer of the court and subject to his control in the same way as he would have been had he been in custody awaiting sentence. Under such circumstances, we do not think that, merely because there was added to the sentence a provision that it should take effect immediately, the court was stripped of the power to set it aside, to grant a new trial or to enter any of the orders which a court ordinarily has the power to enter at any time during the term. See Ex parte Lange, 18 Wall. 163, 21 L. Ed. 872.

It is true that the beginning of the service of a sentence ends the power of the court to change it by granting probation, or otherwise. U. S. v. Murray, 275 U. S. 347, 48 S. Ct. 146, 72 L. Ed. 309; Ex parte Lange, supra; U. S. v. Howe (C. C. A. 2d) 280 F. 815, 23 A. L. R. 531. But in this case we do not think that the service of the sentence had begun. The imprisonment in the penitentiary, which was the sentence, had not commenced, and the prisoner had not passed from the custody and control of the court into that of the executive. The court, through the marshal, still had him under its control. See Miller v. Snook (D. C.) 15 F.(2d) 68, 70. The provision that the sentence should take effect immediately was at the most merely directory. In re Morse (C. C.) 117 F. 763; 16 C. J. 1372. The judge says that its purpose is that the prisoner may have the benefit of the time which elapses while he is being held and transported prior to imprisonment in the penitentiary. But its effect in reality is merely to decrease the penitentiary sentence by giving him credit for the time that he is in the custody of the court preparatory to beginning the sentence. The idea that he is actually serving the sentence in the penitentiary from the time of its imposition is a pure fiction, and one which ought not be indulged when its effect is to deprive the court of the powers essential to the proper administration of justice.

The power of the judge to modify and set aside judgments during the term is an ancient one and founded upon the soundest reasons. Upon more mature consideration he may, and frequently does, decide that a sentence imposed during the term should be lightened or increased. He may learn additional facts about a case which show the original sentence to be entirely inadequate or unreasonably harsh; and, if the mere incorporation in the sentence of such a provision as we have here is to deprive him of further power over the case, the greatest embarrassments in the administration of justice and the greatest hardships may result, for the judge would be powerless to reduce a sentence which he thought excessive, or grant a new trial to a prisoner shown to be innocent, even though such prisoner were in the courtroom and actually at the bar of the court. He would likewise be powerless to increase punishment, although it should develop that the sentence originally imposed was entirely inadequate. We do not think it possible for a judge to thus abdicate the power which the law vests in him, by the mere wording of the sentence of imprisonment. Not until the service of the sentence has actually commenced, until the prisoner has actually passed from the control of the court into the control of the executive, does the judge lose during the term the power to enter the orders which he ordinarily has power to enter. There was error, therefore, in holding that the court was without power to pass upon the motion for a new trial or modify the sentence, and the case will be remanded in order that these matters may be passed upon.

In view of the fact that the case is remanded as it is, it is not necessary that we pass upon the contention that the sentence imposed was a cruel and unusual punishment forbidden by the Constitution. Of course, the matter of punishment, if within the limits prescribed by statute, is ordinarily a matter within the discretion of the trial judge. It would seem, however, that under the National Prohibition Act (27 USCA) such punishment as was inflicted here would be justified only where there is proof of repeated sales, or attempts to commercialize violations of the law, or other circumstances of aggravation. Such is the intent of Congress as expressed in the Jones Act (27 USCA §§ 91, 92).

Remanded.